IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| SEAN BERNAT, et al.,<br><br>    Plaintiffs,<br><br><br><br>        vs.<br><br><br>THE HONORABLE MICHAEL G. ALLPHIN, et al.,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER DENYING PETITION UNDER 28 U.S.C. § 2254 FOR A WRIT OF HABEAS CORPUS<br><br><br><br>Case No. 1:05-CV-155 TS |

This is a consolidated action[1] where a number of Petitioners have filed Petitions for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  Respondents in these consolidated matters are Utah state court judges.  Petitioners have mounted an attack on the constitutionality of Utah's two-tiered trial system.  This matter came before the Court for oral argument on July 26, 2006.  Having considered the arguments of counsel, the materials in the file, and being otherwise fully informed, the Court will deny the Petitions.

---

[1] The following cases have been consolidated into this action: Scovell v. Lindberg, 2:05-CV-1014 TS; Mann v. Dawson, 2:05-CV-1015 TS; Serre v. Burton, 2:05-CV-1016 TS; Kee v. Lubeck, 2:05-CV-1017 TS; Lang v. Boyden, 2:05-CV-1018 TS; and Zakharian v. Burton, 2:05-CV-1019 TS.

## I.  UTAH'S TWO-TIERED TRIAL SYSTEM

In Utah, there are two courts in which criminal matters are prosecuted: justice courts and district courts.  Justice courts are authorized under Article VIII, Section 1 of the Utah Constitution and Title 78, Chapter 5 of the Utah Code.  Justice courts may be created by cities or counties and may hear infractions and class B and C misdemeanors which occur in that city or county.  A justice court is a "court not of record"[2] and justice court judges need not be law trained.[3]  District courts are constitutionally created courts of general jurisdiction.

Appeals from justice courts are heard in district court.[4]  Utah Code Ann. § 78-5-120 provides that a defendant is entitled to a trial de novo in the district court after sentencing or a guilty plea.  De novo review may also be obtained in certain other circumstances which are not germane to this action.

When a defendant files a notice of appeal from a justice court, the judgment is not automatically vacated or suspended.  Justice court defendants must follow the same process as district court defendants to obtain a stay of the sentence.  The requirements of receiving a stay are set out in Rule 27 of the Utah Rules of Criminal Procedure.  Under Rule 27, a justice court defendant can obtain a stay by filing an application for a certificate of probable cause, first with the justice court and, if the justice court denies the application, then with the district court.  The court must make certain findings before a certificate of probable cause may issue.

---

[2]Utah Code Ann. §78-5-101.

[3]Utah Const. Art. VIII, § 11.

[4]Utah Code Ann. § 78-5-120.

At the de novo trial in the district court, the defendant is entitled to all of the constitutional rights he would normally be entitled to. The judgment of the district court replaces the judgment of the justice court. The judgment of the district court cannot be appealed unless the district court rules on the constitutionality of a statute or ordinance.[5]

## II.  PROCEDURAL BACKGROUND[6]

Each Petitioner was charged with a misdemeanor offense or offenses in a justice court. Petitioners then pled guilty and appealed to the state district court. At the district court level, Petitioners then argued that the two-tiered system violated their constitutional rights. Petitioners' arguments were denied at the state district court level. Petitioners appealed to the Utah Court of Appeals which denied their claims, noting that the constitutionality of a rule was being challenged, not a statute, therefore the court was without jurisdiction to hear the matter. Petitioners then filed Petitions of Extraordinary Relief, which were denied by the Utah Court of Appeals. Petitioners filed a Petition for a Writ of Certiorari with the Utah Supreme Court. The Utah Supreme Court denied Petitioners' claims, as will be discussed in detail below. Petitioners then filed a Petition for a Writ of Certiorari with the United States Supreme Court, which was denied. Petitioners have now filed this Petition for a Writ of Habeas Corpus.

## III.  UNITED STATES SUPREME COURT CASE LAW

The United States Supreme Court has addressed the constitutionality of two-tiered systems on three occasions. Each time, the Court has rejected arguments that such systems violate the Double Jeopardy Clause. The Court, however, has never directly addressed the issue

---

[5]*Id*. § 78-5-120(7).

[6]While there are distinctions between the cases, these distinctions are largely irrelevant and the facts listed above are sufficiently accurate for the purposes of this Order.

presented by this Petition—whether the Double Jeopardy Clause requires that the conviction be automatically vacated once a defendant seeks a de novo trial of his conviction or guilty plea in a justice court.

A.      *COLTEN v. KENTUCKY*

The Court first addressed a two-tiered system in *Colten v. Kentucky*.[7]  Under the Kentucky system, certain crimes can be tried in inferior courts.[8]  If the defendant is convicted or pleads guilty, he has a right to a trial de novo in a court of general jurisdiction, so long as he applies within the statutory time.[9]  The right to a trial de novo is absolute and the defendant need not allege error in the inferior court proceeding.[10]  "If he seeks a new trial, the Kentucky statutory scheme contemplates that the slate be wiped clean."[11]  The Court compared the appeal from an inferior court trial or plea to that of an appeal from a trial or plea from a court of general jurisdiction, the only difference being that the appeal from an inferior court resulted in a trial de novo.[12]

In *Colten*, a defendant had been convicted in a lower court of disorderly conduct and had been fined $10.00.[13]  The defendant "appealed" and received a trial de novo in a court of general

[7]407 U.S. 104 (1972).

[8]*Id*. at 112.

[9]*Id*. at 112–13.

[10]*Id*. at 113.

[11]*Id*.

[12]*Id*.

[13]*Id*. at 107–108.

4

jurisdiction.[14]  At that trial, he was convicted and fined $50.00.[15]  The defendant argued that it was unconstitutional for him to receive a greater punishment after his trial de novo and argued that the system violated the Double Jeopardy Clause.  The Court rejected both arguments.  The Court concluded that the Kentucky two-tiered justice court system was not unconstitutional.

B.    *LUDWIG v. MASSACHUSETTS*

In *Ludwig v. Massachusetts*,[16] the Court addressed the two-tiered system established in Massachusetts.  In the Massachusetts system, a defendant who pleads guilty in a justice court can appeal his sentenced, but is not afforded a trial de novo respecting his guilt or innocence.[17]  If the defendant pleads not guilty, he is afforded a bench trial.[18]  If he is found guilty, the defendant may appeal and receive a trial de novo.[19]  "Once a person convicted in the district court indicates that he is going to appeal, his conviction is vacated."[20]

In *Ludwig*, the defendant was tried before a justice court where he was found guilty and was fined.[21]  The defendant appealed and, during the de novo proceedings, filed a motion to

---

[14]*Id*. at 108.

[15]*Id*.

[16]427 U.S. 618 (1976).

[17]*Id*. at 620–621.

[18]*Id*. at 621.

[19]*Id*.

[20]*Id*. at 621–22.

[21]*Id*. at 623.

dismiss on the grounds that he had been deprived of his federal constitutional right to a speedy trial and that he had been subjected to double jeopardy.[22]

The Court held that the Massachusetts system was constitutional.  With regard to the defendant's double jeopardy argument, the Court held "that there is no double jeopardy violation posed by the Massachusetts system."[23]  The defendant had argued that because he had been placed once in jeopardy and convicted, the state could not retry him when he informs the trial court of his decision to appeal and to secure a trial de novo.[24]  The Court found defendant's argument to be without substance.[25]

The Court explained as follows:

The decision to secure a new trial rests with the accused alone.  A defendant who elects to be tried De novo in Massachusetts is in no different position than is a convicted defendant who successfully appeals on the basis of the trial record and gains a reversal of his conviction and a remand of his case for a new trial.  Under these circumstances, it has long been clear that the State may reprosecute.  The only difference between an appeal on the record and an appeal resulting automatically in a new trial is that a convicted defendant in Massachusetts may obtain a "reversal" proceedings at his first trial.  Nothing in the Double Jeopardy Clause prohibits a State from affording a defendant two opportunities to avoid conviction and secure an acquittal.[26]

---

[22]*Id.*

[23]*Id.* at 631.

[24]*Id.*

[25]*Id.*

[26]*Id.* at 631–32.

C.    *JUSTICES OF BOSTON MUNICIPAL COURT v. LYDON*

The Supreme Court re-examined the constitutionality of the Massachusetts system in *Justices of Boston Municipal Court v. Lydon*.[27]  In that case, a defendant was convicted after a first-tier bench trial.[28]  The defendant requested a trial de novo and, before the trial commenced, moved to dismiss the charges against him arguing that no evidence of intent had been presented at the bench trial.[29]  In support of his motion, defendant cited *Burks v. United States*,[30] which held that the Double Jeopardy Clause bars a second trial when a reviewing court reverses a conviction on the ground that the evidence presented at the first trial was legally insufficient.[31]  The trial court denied the motion to dismiss.[32]  A federal district court, however, granted defendant's petition for a writ of habeas corpus and that decision was affirmed by the First Circuit Court of Appeals.[33]

The Supreme Court reversed the federal courts' decisions.  The Court relied on the principal of "continuing jeopardy" in support of its decision.[34]  "That principal 'has application

---

[27]466 U.S. 294 (1984).

[28]*Id*. at 297.

[29]*Id*. at 297–98.

[30]437 U.S. 1 (1978).

[31]*Lydon*, 466 U.S. at 298.

[32]*Id*. at 298–300.

[33]*Id*.

[34]*Id*. at 308–09.

7

where criminal proceedings against an accused have not run their full course.'"[35] The Court found that the defendant failed to identify any stage of the state proceedings where jeopardy was terminated.  The Court noted that "[w]hile technically [the defendant] is 'tried again,' the second stage proceedings can be regarded as but an enlarged, fact-sensitive part of a single, continuous course of judicial proceedings during which, sooner or later, a defendant receives more—rather than less—of the process normally extended to criminal defendants in this nation."[36]

The Court went on to note that the defendant "was in 'jeopardy' in only a theoretical sense."[37]  The Court stated that "virtually nothing can happen to a defendant at a first-tier trial that he cannot avoid.  He has an absolute right to obtain a de novo trial, and he need not allege error at the first-tier trial to do so.  Once the right to a de novo trial is exercised, the judgment of the bench trial is 'wiped out.'"[38]  The Court went on to note that the two-tiered system offers benefits which are not available to others, and the Court held that retrying the defendant was constitutionally permissible.[39]

## IV.  THE UTAH SUPREME COURT DECISION

The decision of the Utah Supreme Court[40] on this matter warrants further discussion. Before the Utah Supreme Court, Petitioners made the same arguments they make in this Petition.

---

[35]*Id*. at 308 (quoting *Price v. Georgia*, 398 U.S. 323, 326 (1970)).

[36]*Id*. at 309 (second alteration in original) (internal quotation omitted).

[37]*Id*. at 310.

[38]*Id*.

[39]*Id*. at 312.

[40]*Bernat v. Allphin*, 106 P.3d 707 (Utah 2005).

They argued that Utah's two-tiered system violates Double Jeopardy, Due Process, and Equal Protection.[41]  The Utah Supreme Court rejected each of Petitioner's arguments in a detailed and well-reasoned opinion.

With regard to the Double Jeopardy issue, the Court examined prior United States Supreme Court case law and noted that none of the cases cited by Petitioners directly dealt with the issue of whether a sentence imposed in a justice court must be vacated pending a de novo trial.[42]  The court found that "Utah's system is best viewed as placing defendants in the same position as district court defendants appealing their sentence in the first instance . . . ."[43]  The Court concluded that since jeopardy does not terminate when a defendant is convicted in justice court and then appeals, he is not placed twice in jeopardy when he requests a de novo trial.[44] Thus, the court found that the system did not violate the Double Jeopardy Clause.

Petitioner argued that the requirement that they obtain a stay of their conviction while pursuing their trial de novo violated due process.  The Utah Supreme Court found that Petitioners argument was "flawed in that it focuse[d] on the perceived inadequacies relating to a defendant's ability to obtain a *stay* of his or her conviction, not on a defendant's ability to effectively *appeal* his or her conviction."[45]  The court noted that an individual convicted in a justice court possesses

---

[41]*Id*. at 709.

[42]*Id*. at 714.

[43]*Id*.

[44]*Id*. at 716.

[45]*Id*. at 716–17.

an absolute right to a de novo trial.[46]  The requirement that a defendant obtain a certificate of probable cause before the conviction is stayed has no affect on a defendant's ability to receive a de novo trial.[47]  Thus, the Court rejected Petitioners' arguments that the system violated the Due Process Clause.[48]

Finally, the Utah Supreme Court rejected Petitioners equal protection claim.  Petitioners argued that because a justice court defendant maintains a guilty status pending a trial de novo, a justice court defendant is treated differently than a defendant who has obtained a new trial after a successful appeal.[49]  The Utah Supreme Court again held that this analysis was flawed.[50]  The court held that a justice court defendant is not similarly situated to a defendant who has received a new trial after an appeal.[51]  Rather, a justice court defendant is similarly situated to a district court defendant appealing in the first instance.[52]  The court found that, under this analysis, justice court defendants were, if anything, treated more favorably because they received a trial de novo.[53]  For these reasons, the court denied Petitioners' claims.

---

[46]*Id*. at 717.

[47]*Id*.

[48]*Id*.

[49]*Id*.

[50]*Id*.

[51]*Id*.

[52]*Id*. at 717–18.

[53]*Id*. at 718.

## V.  THE PARTIES' ARGUMENTS

### A.    PETITIONERS' ARGUMENTS

Petitioners make three arguments in support of their contention that Utah's two-tiered system violates the United States Constitution.  First, Petitioners argue that their double jeopardy rights are violated by the Utah system which requires Petitioners to arrive in district court for a trial de novo while still under jeopardy from the justice court conviction.  They argue that the Fifth Amendment and United States Supreme Court case law require that the slate must be wiped clean as soon as an individual files their notice of appeal with the district court.  Second, Petitioners argue that federal due process rights are violated by the process which shifts the burden of proof and persuasion to the defendant to show that he has earned the right to appeal.  They argue that the requirement of obtaining a certificate of probable cause before the sentence of the justice court will be stayed is unconstitutional under the Due Process Clause.  Third, Petitioners argue that the process violates the Equal Protection Clause because other similarly situated with Petitioners are afforded greater protections.

### B.    RESPONDENTS' ARGUMENTS

Respondents first argue that Petitioners are not "in custody" for purposes of 28 U.S.C. § 2254, and thus, the Court lacks jurisdiction and this Petition should be dismissed.  Second, Respondents argue that this Petition is essentially asking the Court to review a decision by the Utah Supreme Court, something which is prohibited under the *Rooker-Feldman* doctrine. Respondents also respond substantively to Petitioners' three arguments.  Respondents argue that Petitioners have misconstrued United States Supreme Court case law.  They argue that this case law has never required a state to automatically vacate a justice court conviction upon appeal.

11

Respondents further argue that the Due Process Clause and the Equal Protection Clause are not implicated here.

## VI.  ROOKER-FELDMAN DOCTRINE

Respondents argue that this Court lacks jurisdiction to hear the Petitions pursuant to the *Rooker-Feldman* doctrine.  Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction to review state court decisions.[54]  This rule is not absolute, however, as district courts may properly exercise review pursuant to 28 U.S.C. § 2254.  The Tenth Circuit has recently noted that "*Rooker-Feldman* does not apply in the habeas context because Congress has authorized federal district courts to review state prisoners' petitions."[55]

Respondents argue that Petitioners are essentially seeking a review of the decision by the Utah Supreme Court.  Based on the authority discussed above, the Court must reject Respondents' argument.  The *Rooker-Feldman* doctrine does not prevent the Court from hearing these Petitions.

## VII.  28 U.S.C. § 2254 STANDARD OF REVIEW

28 U.S.C. § 2254(a) states: "The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person *in custody* pursuant to the judgment of a State court only on the ground that he is in custody in

---

[54]*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

[55]*Bear v. Patton*, --- F.3d ---, 2006 WL 1681347, *4 n.4 (10th Cir. 2006).  *See also Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 n.8 (2005) ("Congress, if so minded, may explicitly empower district courts to oversee certain state-court judgments and has done so, most notably, in authorizing federal habeas review of state prisoners' petitions.") (citing 28 U.S.C. § 2254(a)).

violation of the Constitution or laws or treaties of the United States."[56]  The statue goes on to state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - -
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[57]

Since Petitioners filed their § 2254 petitions after the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA")[58] effective date, its provisions apply to this appeal.[59]  "Under AEDPA, a federal court may grant habeas relief on a claim adjudicated on the merits by a state court only if the state court proceedings 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court,' . . . ."[60]

"A state court decision is 'contrary to' Supreme Court precedent in two circumstances: (1) when 'the state court applies a rule that contradicts the governing law set forth in [the Court's] cases'; or (2) when 'the same court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different

---

[56]28 U.S.C. § 2254(a) (emphasis added).

[57]28 U.S.C. § 2254(d).

[58]*Id*.

[59]*Smallwood v. Gibson*, 191 F.3d 1257, 1264 (10th Cir. 1999).

[60]*Hamilton v. Mullin*, 436 F.3d 1181, 1186 (10th Cir. 2006) (quoting 28 U.S.C. § 2254(d)(1)).

from' that reached by the Court."[61]  "A state court decision constitutes an 'unreasonable application' of Supreme Court precedent if 'the state court identifies the correct governing principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"[62]  "Thus, '[u]nder § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"[63]  "Finally, a state prisoner seeking habeas relief based on alleged erroneous factual determinations must overcome by clear and convincing evidence the presumption of correctness afforded state court factual findings."[64]  The Court finds that this is a high burden which Petitioner is unable to meet in this case.

## VIII.  ANALYSIS

Petitioners argue the Utah Supreme Court's decision was contrary to clearly established federal law, as determined by the United States Supreme Court.  Before addressing Petitioners' arguments relating to specific constitutional provisions, the Court must first address whether Petitioners are in custody for § 2254 purposes.

---

[61]*Id*. (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

[62]*Id*. (quoting *Williams*, 529 U.S. at 413).

[63]*Id*. (quoting *Williams*, 529 U.S. at 411).

[64]*Id*. (citing 28 U.S.C. § 2254(e)(1)).

A.      WHETHER PETITIONERS ARE IN CUSTODY

As noted above, an individual who is "in custody" may file a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  A habeas petitioner must be "in custody" under the conviction or sentence under attack at the time his petition is filed.[65]  Courts have liberally construed the "in custody" requirement for purposes of federal habeas.[66]  The Supreme Court's "interpretation of the 'in custody' language has not required that a prisoner be physically confined in order to challenge his sentence on habeas corpus."[67]  Supreme Court precedent requires that the petitioner suffer from some "present restraint" from a conviction in order to be deemed "in custody."[68]  The provision requires that the person be subject to "restraints not shared by the public generally."[69]  The Court held in *Maleng* that a habeas petitioner does not remain "'in custody' under a conviction after the sentence imposed for it has fully expired, merely because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted."[70]

In order to determine whether Petitioners are "in custody" for the purposes of § 2254, it is necessary to discuss the status of each of the Petitioners.

---

[65]*Maleng v. Cook*, 490 U.S. 488, 490–91 (1989).

[66]*Id*. at 492.

[67]*Id*. at 491.

[68]*Id*. at 492.

[69]*Jones v. Cunningham*, 371 U.S. 236, 240 (1963).

[70]*Maleng*, 490 U.S. at 492.

1.      SEAN BERNAT

Sean Bernat entered a guilty plea to alcohol-related reckless driving.  Mr. Bernat was ordered to serve 180 days in jail and to pay a fine of $1,400.  The court suspended all but two days in jail.  The court transferred the responsibility for collecting the fines to the Office of State Debt Collection.  The court does not have any matters pending or anticipated against Mr. Bernat.[71]

2.      DARRIN MANN

Darrin Mann entered a guilty plea to driving under the influence and was ordered to serve 180 days in jail and pay a fine of $1,850.  The court suspended a portion of the fine and 150 days of the jail sentence.  Mr. Mann served 30 days in jail and was placed on probation.  The court transferred responsibility for collecting the fine to the Office of State Debt Collection.  Mr. Mann has a warrant out for his arrest based on his failure to appear at a hearing.  The court is not otherwise tracking the case.[72]

3.      DYLAN SERRE

Dylan Serre entered a guilty plea to alcohol-related reckless driving and was sentenced to six months in jail and to pay $500.  The court suspended the jail sentence.  The court has not taken any action in this case since 2002.[73]

---

[71]Docket No. 11, Ex. A.

[72]*Id.*, Ex. B.

[73]*Id.*, Ex. C.

4.     JEREMY KEE

Jeremy Kee entered a guilty plea to alcohol-related reckless driving and was ordered to

serve 30 days in jail and to pay a fine of $850.  The jail time was suspended.  Mr. Kee has paid

the fine and the case has been closed.[74]

5.     HENRY ZAHKARIAN

Henry Zahkarian entered guilty pleas to driving under the influence and possession of

drug paraphernalia and was ordered to serve 120 days in jail and to pay $1,570 in fines.  The jail

time was suspended pending the completion of 240 hours of community service.  Mr. Zahkarian

has been making payments to the court and has completed the community service.[75]

6.     DONALD G. LANG

Donald G. Lang entered a guilty plea to driving under the influence and was ordered to

serve 120 days in jail and to pay a fine of $1,350.  The court suspended all but ten days in jail

and Mr. Lang served that time.  Responsibility for collecting the fine was sent to the Office of

State Debt Collection.  The court has otherwise closed the case and has no actions pending or

anticipated.[76]

---

[74]*Id*., Ex. D.

[75]*Id*., Ex. E.

[76]*Id*., Ex. F.

7.      JOSEPH SCOVELL

Joseph Scovell entered a guilty plea to driving under the influence and was ordered to pay a fine of $1,850.  The court granted credit for time served.  The court closed the case in May 2003, and there are no actions pending.[77]

Three Petitioners concede that their state cases were closed prior to the filing of their petitions: Joseph Scovell, Jeremy Kee, and Donald Lang.  Thus, they were not "in custody" for purposes of § 2254 and the Court is without jurisdiction to hear their Petitions.[78]  Sean Bernat's case is similar.  Although Mr. Bernat's case is still open, he has served his jail time, and the responsibility for collecting his fine has been transferred to the Office of State Debt Collection.  Thus, it is doubtful that Mr. Bernat can be considered "in custody."

The other three Petitioners can be considered "in custody."  Darrin Mann was given a suspended sentenced and was placed on probation.  Additionally, Mr. Mann has a warrant out for his arrest for his failure to appear at a hearing.  Dylan Serre's case is still open.  Mr. Serre was given a suspended jail sentence and, it appears, has not paid the $500 he was fined.  Finally, Henry Zahkarian's case is still open.  Mr. Zahkarian has been and is still required to make payments on his fines.  If these Petitioners fail to comply with the various requirements placed upon them, they could be subject to the imposition of their original jail terms.  Thus, these individuals still suffer from some "present restraint" from their convictions.

---

[77]*Id*., Ex. G.

[78]The Court notes that Petitioners Scovell, Kee, and Lang ask that the Court should exclude the time that they were seeking review before the Utah Supreme Court and the United States Supreme Court, but have not provided authority to support their argument.

A number of courts have held that individuals in similar situations—such as those on parole, probation, or with suspended sentences—are in custody for the purposes of § 2254.[79] Therefore, the Court finds that Petitioners Mann, Serre, and Zahkarian are "in custody" for purposes of § 2254.  The Court notes that the case before the Court is different from those cited by Respondents[80] because a suspended jail sentence, as well as a monetary fine, was involved.  If Petitioners were merely faced with a monetary fine, the outcome may have been different.  Since at least some of the Petitioners are "in custody" for purposes of § 2254, the Court will address the substantive arguments raised in the Petitions.

B.   DOUBLE JEOPARDY

As noted above, "a federal court may grant habeas relief on a claim adjudicated on the merits by a state court only if the state court proceedings 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court,' . . . ."[81]  Petitioners argue that the Utah Supreme Court's decision was contrary to clearly established federal law.

---

[79]*See e.g. Jones*, 371 U.S. 236 (individual on parole was "in custody" for purposes of habeas); *Miskel v. Karnes*, 397 F.3d 446, 450 (6th Cir. 2005) (petitioner with suspended jail sentence was "in custody"); *Helm v. Jago*, 588 F.2d 1180, 1181 (6th Cir. 1979) (probationer is "in custody"); *United States v. Hopkins*, 517 F.2d 420, 423–24 (3d Cir. 1975) (petitioner who was on probation was "in custody").

[80]*See Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003) (holding "payment of restitution or a fine, absent more, is not the sort of 'significant restraint on liberty' contemplated in the 'custody' requirement of the federal habeas corpus statutes."); *United States v. Mett*, 65 F.3d 1531, 1533 (9th Cir. 1995) ("Defendants sentenced only to pay a fine cannot attack sentences by means of the state habeas statute, 28 U.S.C. § 2254."); *United States v. Michaud*, 901 F.2d 5, 7 (1st Cir. 1990) ("A monetary fine is not a sufficient restraint on liberty to meet the 'in custody' requirement for § 2255 purposes.").

[81]*Hamilton*, 436 F.3d at 1186 (quoting 28 U.S.C. § 2254(d)(1)).

The Utah Supreme Court, in its decision, noted that the Supreme Court had not directly addressed the issue raised by Petitioners.[82]  While the court acknowledged that a defendant's ability to automatically obtain a 'clean slate' on appeal played an important part in the Court's decision, the Utah Supreme Court differentiated Utah's two-tiered system from those in Kentucky and Massachusetts.  The court found that a justice court defendant in Utah "stands in a position similar to a district court defendant appealing his or her conviction before either this court or the court of appeals."[83]  Further, the court found that "where jeopardy has attached in the justice court proceeding and remains attached without termination during the trial de novo, continuing jeopardy allows for a defendant-initiated appellate review in the form of a de novo trial without implicating double jeopardy concerns."[84]

The court concluded "that Utah's two-tier justice system does not violate the prohibition against double jeopardy, even though a defendant's sentence from justice court is not automatically vacated pending a trial de novo in district court."[85]  The court held that since jeopardy does not terminate when a defendant is convicted in justice court, a defendant is not placed twice in jeopardy when he or she requests a de novo trial.[86]  The court went on to state that nothing in the Double Jeopardy Clause prohibits a state from affording a defendant two

---

[82]*Bernat*, 106 P.3d at 714 ("Neither *Colten*, *Ludwig*, nor *Lydon* directly addressed whether a sentence imposed in a justice court must be vacated pending a de novo trial.").

[83]*Id*.

[84]*Id*.

[85]*Id*. at 716.

[86]*Id*.

opportunities to avoid prosecution and secure an acquittal.[87]  Thus, the court held that Utah's

two-tiered system did not violate the Double Jeopardy Clause.[88]

The Utah Supreme Court correctly noted that the United States Supreme Court has never

directly addressed the issue raised by Petitioners.  Despite Petitioners' arguments, the Court has

never held that a justice court conviction must be immediately vacated pending a trial de novo.

Thus, the Court finds that the Utah Supreme Court's decision is not contrary to clearly

established federal law, as established by the Supreme Court.  The requirement that a justice

court conviction be wiped clean pending a de novo trial has never been clearly established by the

United States Supreme Court.

The Court next turns to whether the Utah Supreme Court's decision was an unreasonable

application of federal law.  "A state court decision constitutes an 'unreasonable application' of

Supreme Court precedent if 'the state court identifies the correct governing principle from [the]

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"[89]

"Thus, '[u]nder § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may

not issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly.

Rather, that application must also be unreasonable.'"[90]

---

[87]*Id.* (citing *Lydon*, 466 U.S. at 312).

[88]*Id.*

[89]*Hamilton*, 436 F.3d at 1186 (quoting *Williams*, 529 U.S. at 413).

[90]*Id.* (quoting *Williams*, 529 U.S. at 411).

Both the decision of the Utah Supreme Court and the state of federal case law have been discussed at length above.  Based upon careful consideration of the Utah Supreme Court's decision and the federal law as established by the Supreme Court, the Court cannot find that the Utah Supreme Court's application of *Colten*, *Ludwig*, and *Lydon* was unreasonable.  Thus, Petitioners' § 2254 Petition is denied on this ground.

C.      DUE PROCESS

Before the Utah Supreme Court, Petitioners argued "that Utah's system (1) discourages and burdens the right to appeal, (2) unlawfully shifts the burden to the accused to prove entitlement to appeal, and (3) burdens the presumption of innocence."[91]

Petitioners first argued, relying on *Rinaldi v. Yeager*,[92] "that the appeals process from a justice court impermissibly burdens a defendant's right to appeal by requiring him or her to prepare and file a petition for a certificate of probable cause."[93]  The Utah Supreme Court found Petitioners' argument to be flawed "in that it focuses on the perceived inadequacies relating to a defendant's ability to obtain a *stay* of his or her conviction, not on a defendant's ability to effectively *appeal* his or her conviction."[94]  The court noted that a defendant convicted in justice court has an absolute right to a trial de novo in district court, so long as he or she files a notice of

---

[91]*Bernat*, 106 P.3d at 716.

[92]384 U.S. 305, 310–11 (1966) (holding that once a state establishes avenues of appellate review, "it is . . . fundamental that . . . these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts.").

[93]*Bernat*, 106 P.3d at 716.

[94]*Id*. at 716–17.

appeal within thirty days of sentencing or the entry of a guilty plea.[95]  The court found that since the procedures for obtaining a stay were separate from a defendant's right to appeal, the court could not conclude that the stay procedures burdened a defendant's right to appeal."[96]  For similar reasons, the court rejected Petitioners' arguments that Utah's system impermissibly shifted the burden to a defendant to prove entitlement to appeal.[97]

The standard of review has been set forth above.  The Supreme Court has held that once a state establishes avenues of appellate review, "it is . . . fundamental that . . . these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts."[98]  Under the Utah system, a defendant who is convicted or enters a guilty plea is entitled to a de novo trial, so long as he or she files a notice of appeal within the time allowed.[99]  It is only if the defendant seeks a stay of his or her conviction that the defendant must file a petition for a certificate of probable cause.  Based on this, the Court cannot find that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  Therefore, the Petitions will be denied on this ground.

---

[95]*Id*. at 717 (citing Utah Code Ann. § 78-5-120(1)).

[96]*Id*.

[97]*Id*.

[98]*Rinaldi*, 384 U.S. 305, 310–11.

[99]Utah Code Ann. § 78-5-120(1).

D.        EQUAL PROTECTION

Petitioners' final argument before the Utah Supreme Court was that Utah's two-tiered system violated the Equal Protection Clause.  They argued that because a justice court defendant maintains a guilty status pending a trial de novo, that defendant is treated differently than a defendant who has obtained a new trial after a successful appeal.[100]  The Utah Supreme Court found that justice court defendants were not similarly situated to those defendants who had obtained a new trial after a successful appeal.  "Rather, a justice court defendant is in a similar position to a defendant appealing from a district court conviction in the first instance."[101]  The court went on to state that:

> [w]hen viewed from this correct perspective, a justice court defendant is, if anything, treated more favorably than a similarly situated district court defendant. Unlike defendants appealing from a district court conviction, a defendant convicted in justice court is afforded a second opportunity to relitigate the facts relating to his or her guilt or innocence after having had the advantage of learning about the prosecution's case during the first trial.[102]

Thus, the Court found no equal protection violation.[103]

The Court cannot find that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  Thus, the Petitions will be denied on this ground.

---

[100]*Bernat*, 106 P.3d at 717.

[101]*Id*. at 717–18.

[102]*Id*. at 718.

[103]*Id*.

24

IX.  CONCLUSION

The Court finds that Petitioners have alleged no valid grounds for federal habeas relief.  It is therefore

ORDERED that the Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Docket No. 1) is DENIED.

The Clerk of the Court is directed to close this case forthwith.

DATED   July 27, 2006.

BY THE COURT:

_____
TED STEWART
United States District Judge